UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEBASTIAN CORTEZ CUEVAS | CIVIL ACTION |
| VERSUS | NO. 09-2731 |
| JUSTIN BORDELON, M. COLE | UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY |

## ORDER AND REASONS

This matter was before the undersigned United States Magistrate Judge for a non-jury trial on August 30, 2010, with consent of the parties pursuant to 28 U.S.C. § 636(c).[1] For the reasons orally assigned, as amended and supplemented herein, the Court has ordered the dismissal of the 42 U.S.C. § 1983 claims brought by the plaintiff Sebastian Cortez Cuevas ("Cuevas") and finds in favor of the defendants, former Orleans Parish Sheriff's Deputies Justin Bordelon and Mario Cole.

**I.    Findings of Fact based on the Testimony and Evidence at Trial**[2]

Cuevas testified at trial that, while he was a pretrial detainee housed in the Orleans Parish Prison system ("OPP") on November 26, 2008, the defendant Deputy Justin Bordelon entered his cell and ordered him to put on his clothes to be escorted to an FBI interview.  Bordelon then

---

[1] Rec. Doc. Nos. 13, 14.

[2] To the extent the findings of fact are conclusions of law, and vice versa, they are deemed so and accepted.

proceeded to slam him against the wall and choke him. When Deputy Mario Cole entered the cell, he hit Cuevas in the head with a pair of shackles. Cuevas claims that he fell to the ground after losing his breath from the choking by Bordelon.

He then got up and tried to dress, and Bordelon hit him again. He stated that Cole remained at the cell door and did not engage in any further actions against him. He recalled that these two officers escorted him directly to the interview, in spite of the fact that his lip was bleeding.

Cuevas testified that he filed a grievance complaint against the two deputies for the incident. He stated that he did not hear back from the administration. On cross-examination, he could not explain why the prison administration had no record of that grievance ever being filed. He also stated that he tried to tell the FBI interviewer about the incident, but nothing was done.

Cuevas stated that he suffered a cut to his lip, a "blood clot" in his eye, and what he believed to be a fractured rib. Cuevas testified that at least one week later he was taken to see the prison doctor and was examined for his injuries. He was told that he would be sent for an x-ray of his ribs, but he never was called back for follow-up.

On cross-examination, however, Cuevas conceded that he was seen by a nurse for his complaints on November 27, 2008.[3] He was given an ice pack for pain. He was also placed on the next available sick call for complaints of a "broken rib" and eye pain. He was seen again for those complaints on December 3, 2008, by the prison physician.[4] The doctor noted that his left side was tender but nothing felt displaced. He noted that there was no bruising or swelling. The doctor found Cuevas's response to the palpation to be exaggerated, and he suspected malingering to be possible.

---

[3] Rec. Doc. No. 22-1, Defendants' Exh. A.

[4] Rec. Doc. No. 22-1, Defendants' Exh. B.

No order was produced requiring that Cuevas be sent for an x-ray. While in the medical unit after another incident on January 15, 2009, Cuevas made no complaints about his ribs or the prior cuts.[5]

Cuevas further testified, upon questioning by the Court, that Deputy Bordelon filed a disciplinary charge against him for battery of a police officer. He denied ever being informed that he was arrested for a criminal charge for battery on a police officer.[6] He recalled being taken to a very brief disciplinary hearing before Sergeant Marshall and two other OPP deputies. He was found guilty as charged and was sentenced to 80 days in disciplinary confinement on that charge. He appealed the decision to no avail.

Deputy Bordelon testified that he and his partner, Deputy Cole, were sent to escort Cuevas to an interview with the FBI. He went to the cell and told Cuevas to get dressed. He said Cuevas began cursing and told him to stop messing with him. He did not understand the request since he had never met Cuevas before. Bordelon turned to signal for Cole to assist him and, at that time, Cuevas struck him in the head. He attempted to restrain Cuevas, who had become combative, and he and Cole were eventually able to restrain Cuevas. Bordelon testified that he received a bruise to the head from Cuevas's blow. They called for the ranking sergeant who came and took Cuevas to the interview. One of the ranking officers took a picture of the bruise to his head.[7] He also stated that he prepared a written incident report and charged Cuevas with battery of a police officer. He further stated that if Cuevas had any injuries, they were caused by hitting the floor when they took him down to restrain him after he became combative.

---

[5]Rec. Doc. No. 22-1, Defendants' Exh. C.

[6]*But see*, Rec. Doc. No. 22-1, Defendants' Exh. D.

[7]Rec. Doc. No. 22-1, Defendants' Exh. E.

Deputy Cole testified that he and his partner, Deputy Bordelon, went to the tier where Cuevas was housed to escort him to the FBI interview. He stayed at the end of the tier holding the handcuffs or shackles and talking to another deputy, while Bordelon approached the cell to get Cuevas dressed. He said he heard a commotion, and he looked up to see Bordelon signaling for him to come to the cell. As he approached, he saw Cuevas strike Bordelon in the head. He said that he dropped the handcuffs on the floor and entered the cell to assist. He recalled using both hands to grab Cuevas's left arm because he had become so combative. The two officers brought him down to the ground to restrain him. He stated that, because Deputy Bordelon had been injured, they called for Sergeant Scott Williams. It was Williams who eventually escorted Cuevas to the interview.

## II. Claims Against Justin Bordelon

At the close of the Plaintiff's case, counsel for the Defendants orally moved for judgment on partial findings as a matter of law pursuant to Fed. R. Civ. P. 52(c) directed at the claims of excessive force and false disciplinary charge against Bordelon.[8] The motion was granted and the Court ordered that the Plaintiff's claims against Bordelon be dismissed with prejudice. In support of that ruling, the Court gave oral reasons, which are amended and supplemented herein.

### A. Standards of Review for Motion for Judgment on Partial Findings under Fed. R. Civ. P. 52(c)

Rule 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party." *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) *quoting Bursztajn v. United States*, 367 F.3d 485, 488-89 (5th Cir. 2004). Judgment entered under Fed. R. Civ. P. 52(c) is to be made after the District Court has heard all of the "evidence bearing on crucial issues

---

[8]Rec. Doc. No. 22, Trial Minutes.

of fact." *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 632 (5th Cir. 2001) (*quoting* Fed. R. Civ. P. 52(c)).

The District Court "'is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.'" *Aubey v. Noble Drilling*, 24 F.3d 240, 1994 WL 242570, *1 (5th Cir. May 25, 1994) (Table, Text in Westlaw) (*quoting* 9 Wright & Miller, Federal Practice and Procedure: Civil § 2371 at 225). When the findings of fact are based on determinations regarding the credibility of witnesses, Rule 52 demands that even greater deference be given to the trial court's findings. *Id*., at 632 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)).

**B.** **Analysis**

Counsel for Defendants moved the Court to dismiss Cuevas's claims against Deputy Bordelon on the grounds of claim and issue preclusion in light of the disciplinary conviction. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that a claim under § 1983 is barred until that conviction has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment would necessarily imply the invalidity of the prisoner's conviction. *Heck,* 512 U.S. at 486-87. A "conviction," for purposes of the *Heck* doctrine, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 643-48 (1997); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998); and *see*, *Jackson v. Mizzel*, 361 Fed. Appx. 622 (5th Cir. Jan. 20, 2010) (finding that *Wilkinson v. Austin*, 545 U.S. 209 (2005) did not overrule *Clarke*).

5

In the instant case, Cuevas concedes that his disciplinary conviction was not successfully challenged on appeal. Considering the parameters of the *Heck* doctrine, the Court finds that his claims of excessive force and false disciplinary report against Deputy Bordelon are subject to dismissal until the *Heck* conditions are met. *Wolters v. Federal Bureau of Prisons*, 352 Fed. Appx. 926, 928 (5th Cir. Nov. 5, 2009). Judgment shall be entered accordingly.

II. **Remaining Claims Against Deputy Mario Cole and Deputy Justin Bordelon**

After the granting of the foregoing motion, remaining before the Court were the medical indifference claims against Deputies Bordelon and Cole and the excessive force claim against Deputy Cole. After the close of evidence, the Court entered its ruling dismissing the claims in favor of the Defendants, Bordelon and Cole. In support of that ruling, the Court gave oral reasons, which are amended and supplemented herein.

    A. **Inadequate Medical Care Claim Against Deputies Bordelon and Cole**

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir.2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *see also Washington v. La Porte Cnty. Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002).

In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle,* 429 U.S. at 104. This is true where the indifference is manifested by prison officials or

prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983." (Emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

However, a disagreement with a course of treatment, including the failure to take an x-ray the patient wanted, does not state a claim for Eighth Amendment indifference to medical needs. *Mendoza*, 989 F.2d at 195. Even the delay in providing care, regardless of the length of the delay, requires the plaintiff to show a deliberate indifference to a serious medical need in order for it to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

In this case, the evidence demonstrates that Cuevas was in fact examined for his complaints within the day after the incident. He also was taken for follow-up care. Afterwards, he expressed no further complaints about the cuts or his rib area pain.

Cuevas's testimony was such that he received care after a short delay and that he was discontent with the fact that he was not taken for an x-ray of his ribs. A review of the medical records submitted at trial reflects that there were no physical signs of actual injury to his ribs, that no x-rays were ordered, and that his medical complaints were found by the doctor to be exaggerated. In short, the prison medical personnel did not find a basis to treat him for a rib injury or that his superficial cuts required further care.

As outlined above, Cuevas's complaint of a short delay before being examined and his discontent with the care he received are not sufficient to establish a constitutional violation. More specifically, he has not stated a claim that the named Defendants, Bordelon and Cole, denied him medical care for a serious injury. The Court finds in favor of the Defendants on this issue. Judgment will be entered accordingly.

### B. Excessive Force Claim Against Deputy Cole

The United States Fifth Circuit Court of Appeals has established a three-part test to be used when evaluating a plaintiff's entitlement to relief from the use of excessive force under 42 U.S.C. § 1983. The plaintiff must show: (1) some injury; (2) that resulted directly and only from a use of force that was clearly excessive to the need; <u>and</u> (3) the excessiveness of which was objectively unreasonable. *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995); *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996); *Thompson v. City of Galveston*, No. G-97-246, 1997 WL 591134, at *5 (S.D. Tex. Sept. 19, 1997).

In assessing the reasonableness of the force used, the Court may consider, among other things, whether there is an immediate threat to the safety of the officers and whether the person is actively resisting the officers or attempting to escape. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Although these factors guide the reasonableness analysis, they are not exclusive and are not to be applied mechanically. *See Id*. Further, the reasonableness standard must be applied objectively in that the facts are viewed from the perspective of the officer at the time of the incident rather than in hindsight, and without examining the officer's underlying intent or motivation. *See Id.*, at 397.

The Courts also may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006). An injury is insufficient to support an excessive force claim where there is no physical injury or where it is extremely minor. *See, e.g.*, *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (no injury); *Gomez v. Chandler*, 163 F.3d 921, 922 (5th Cir.1999) (cuts, scrapes, contusions to the face, head, and body not enough); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997) (bruise caused by having ear twisted considered *de minimis*).

In the instant case, Deputy Cole testified that he saw Deputy Bordelon signal for assistance and then saw Cuevas hit Bordelon on the head. While the Court is not convinced that he necessarily dropped the cuffs and shackles, Cole's testimony indicates that he entered the cell while Bordelon and Cuevas were engaged in a scuffle. To this extent, Cole's testimony coincides with Cuevas's testimony. Under the circumstances, it would have been reasonable for Cole to believe that

Bordelon was in danger and in need of assistance, and he responded with the force he believed necessary to subdue him.

The evidence and testimony also indicate that Cuevas attributes his injuries to the force used by Bordelon. He testified that Bordelon choked him and struck him to cause his lip to bleed, an injury found to be superficial by the medical personnel. Cuevas did not specifically attribute his injuries to the alleged blow by Cole.

Even if he had or intended to do so, he has not established that he received more than a *de minimis* injury. His superficial cuts and rib area pain healed without treatment within a number of weeks. This is not sufficient to prove the elements of excessive force. The Court finds in favor of Deputy Cole on this issue and will enter judgment in his favor. Accordingly,

**IT IS ORDERED** that Deputy Justin Bordelon's oral motion for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c) is **GRANTED**.

**IT IS FURTHER ORDERED** that the 42 U.S.C. § 1983 claims of excessive force and false disciplinary charges brought by Sebastian Cortez Cuevas, against the defendant, Deputy Bordelon, are **DISMISSED WITH PREJUDICE** until such time as the *Heck* conditions are met, each party to bear their own costs.

**IT IS FURTHER ORDERED** that Cuevas's § 1983 claims of inadequate medical care against Deputy Bordelon and Deputy Mario Cole and Cuevas's § 1983 claims of excessive force against Deputy Cole, are **DISMISSED WITH PREJUDICE**, each party to bear their own costs.

New Orleans, Louisiana, this 31st day of August 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**